

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed October 10, 2006                        **United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| GARY HIGGINS and | § | CASE NO. 03-47055-DML-7 |
| ROSARIO MARIA HIGGINS, | § | |
| | § | |
| Debtors. | § | |
| | § | |
| FOUNDERS EQUITY SECURITIES, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | ADVERSARY NO. 05-04149-DML |
| | § | |
| GARY HIGGINS, and | § | |
| ROSARIO MARIA HIGGINS, | § | |
| | § | |
| Debtors. | § | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This adversary proceeding having been heard by the court on October 2 and 3, 2006, and the court, having heard the evidence and considered the submissions and arguments of counsel, now makes the following findings and conclusions:

## I. FINDINGS OF FACT

1. On May 7, 1999, the Debtors[1] opened an account with Plaintiff.

2. On May 25, 1999, G. Higgins opened an account on behalf of Higgins/Garza-Cantu Ltd., a Texas Limited Partnership, with Plaintiff.

3. In the customer agreement executed in connection with opening their account, Debtors stated that they had $18,000,000 in assets and an annual income of $500,000. There is no evidence that Plaintiff relied on the contents of this application in connection with the advances described below.

4. In the customer agreement executed by G. Higgins in connection with opening the account of Higgins/Garza Cantu Ltd., G. Higgins stated that Higgins/Garza Cantu Ltd. had $7,000,000 in assets and an annual income of $1,000,000.

5. At the time they opened the Accounts, the Debtors' assets totaled between $11,000,000 and $13,000,000.

6. At the time they opened the Accounts, the Higgins/Garza Cantu Ltd. Partnership did not have $7,000,000 in assets, and in fact had no assets.

7. At the time they opened the Accounts, the Higgins/Garza Cantu Ltd. Partnership did not have an annual income of $1,000,000, and in fact had no income.

8. On May 28, 1999, Founders advanced the Debtors $494,400 on margin loan.

9. On July 21, 1999, Founders advanced the Debtors $225,600 on margin loan.

10. On May 28, 1999, Founders advanced Higgins/Garza Cantu Ltd. $535,600 on margin loan.

11. On July 21, 1999, Founders advanced Higgins/Garza Cantu Ltd. $244,400 on margin

---

[1] Debtor Gary Higgins is referred to herein as "G. Higgins" and Debtor Rosario Higgins is referred to herein as "R. Higgins."

loan.

12. In 2000, G. Higgins and his daughter, Angela Girard, caused Consolidated Car Wash Management, Inc. to be formed as a Texas corporation.

13. G. Higgins provided operating funds for Consolidated Car Wash Management, Inc. G. Higgins' daughter, Angela Girard, provided only $1,000 in operating funds (which she borrowed from G. Higgins) to the corporation.

14. Between December 2000 and October 2004, G. Higgins transferred in excess of $225,000.00 to Consolidated Car Wash Management, Inc.

15. On September 26, 2002, Plaintiff commenced an arbitration (the "Arbitration") against the Debtors with the NASD Office of Dispute Resolution seeking $882,434.10 in damages.

16. The Debtors received the Arbitration claim on October 1, 2002.

17. G. Higgins transferred his 100% interests in River Oaks I, L.P. and GMP Holdings, LLC to his daughter, Angela Girard, on September 17, 2003 in exchange for $1,500 (his cost in establishing them).

18. In 2003, the Debtors transferred their interest in real property located in Grand Prairie, Texas to River Oaks I, L.P. allegedly in exchange for the partnership's assumption of certain debt to Debtors.

19. On October 28, 2003, River Oaks I, L.P. entered into a contract to sell a portion of the Grand Prairie property to a church adjacent to the property for $325,000.00.

20. The Arbitration resulted in an award against the Debtors in favor of the Plaintiff in the amount of $665,791.32 (the "Award"). The Award was entered on November 29, 2003, and served on the parties on December 1, 2003.

21. On December 10, 2003, the transaction with the church closed and River Oaks I, L.P. received a check in the amount of $133,961.62.

22. G. Higgins does not have any records to show how the funds from the $133,961.62 check were disbursed.

23. On January 22, 2004, the Plaintiff commenced an action in the 162nd Judicial District Court, Dallas County, Texas, to enforce the Award.

24. On May 21, 2004, the state District Court entered a Final Judgment for Plaintiff against Debtors in the amount of $665,791.32 plus post judgment interest (the "Judgment").

25. On June 11, 2004, Founders served the Debtors with post judgment requests for production and interrogatories seeking to determine the status of the Debtors' assets. Debtors did not respond to the discovery.

26. Founders filed a motion to compel discovery responses in the state court action. On September 15, 2004, the state court issued an order compelling responses to the discovery. Debtors did not comply with the order.

27. Founders thereafter filed a motion for sanctions against the Debtors. On November 18, 2004, the state court entered an order sanctioning Debtors and again ordering the Debtors to respond to the discovery. Debtors did not comply with the court's order.

28. Founders then filed a motion for an order to show cause why Debtors should not be held in contempt. The state court issued such an order on February 22, 2005, requiring Debtors to appear on April 8, 2005, and show cause why they should not be held in contempt.

29. Debtors filed a voluntary petition under Chapter 7 on April 7, 2005.

30. During the twelve month period prior to the filing of their chapter 7 petition, G. Higgins transferred in excess of $42,000.00 to River Oaks I, L.P. According to G. Higgins, these payments were for the repayment of debt.

31. GMP Holdings, Inc. is the general partner of River Oaks I, L.P.

32. G. Higgins is the President of GMP Holdings, Inc. and controls all the affairs of River Oaks I, L.P.

33. G. Higgins has signature authority on the bank account of River Oaks I, L.P. and is the only person to ever sign a check on behalf of River Oaks I, L.P.

34. River Oaks I, L.P. is an "insider" with respect to G. Higgins.

35. River Oaks I, L.P. has made numerous payments to other alleged creditors of the Debtors, such as Rosario Higgins' sister and brother-in-law, Elisa and Gunter Rauch, as well as Felix Velasquez (see finding 18).

36. During the twelve month period prior to the filing of their chapter 7 petition, G. Higgins transferred $40,000.00 to an entity in which he claims to own no interest named Consolidated Car Wash Management, Inc.

37. G. Higgins is the President of Consolidated Car Wash Management, Inc.

38. G. Higgins has signature authority on the bank accounts of Consolidated Car Wash Management, Inc.

39. Consolidated Car Wash Management, Inc. is an "insider" with respect to G. Higgins.

40. During the twelve month period prior to the filing of their chapter 7 petition, the Debtors transferred their interest in a promissory note in the amount of $392,345.00 made by Shiloh Ministries, Inc., to Steve Hawkins Custom Homes, LTD.

41. Item 3 on the Debtors' Statement of Financial Affairs indicating that they had not paid

any debts of more than $600 to any creditor which is an insider in the one year prior to bankruptcy is false.

42. On April 30, 2004, Consolidated Car Wash Management, Inc., uttered a check in the amount of $7,628.17 payable to G. Higgins (the "CCWM check").

43. On or about October 29, 2004, G. Higgins enclosed the CCWM check for deposit to the checking account of River Oaks I, LP.

44. G. Higgins has failed to satisfactorily explain the basis for the transfers to River Oaks I, L.P. and Consolidated Car Wash Management, Inc.

45. G. Higgins concealed the CCWM check for a period of six months in an effort to hinder, delay and defraud Founders and his other creditors.

46. G. Higgins engaged in the transfers and concealment of assets at a time when he was insolvent or, by reason of the transfers, became insolvent.

47. G. Higgins operated River Oaks I, L.P. and Consolidated Car Wash Management, Inc. as a single enterprise.

48. G. Higgins has engaged in numerous transactions with River Oaks I, L.P., by which he has borrowed money from or loaned money to River Oaks I, L.P., for which there are insufficient records to determine the reason for and the nature, timing and effect of such transactions.

49. G. Higgins has engaged in numerous transactions with Consolidated Car Wash Management, Inc., by which he has borrowed money from or loaned money to Consolidated Car Wash Management, Inc., for which there are insufficient records to determine the reason for and the nature, timing and effect of such transactions.

50. G. Higgins has caused River Oaks I, L.P., and Consolidated Car Wash Management, Inc., to enter into transactions with each other for which there are insufficient records to determine the reason for and the nature, timing and effect of such transactions.

51. G. Higgins has failed to keep or preserve recorded information, including books, documents, records, and papers, from which his financial condition and business transactions might be ascertained.

52. G. Higgins' failure is not justified under all of the circumstances of the case.

53. G. Higgins has exercised and continues to exercise control over River Oaks I, L.P. and Consolidated Car Wash Management, Inc. as if they were his private personal property, though such entities are allegedly owned by G. Higgins' daughter, Angela Girard.

54. R. Higgins has not transferred any property with actual intent to hinder, delay or defraud her creditors.

55. There is no evidence that R. Higgins failed to keep sufficient records from which her financial conditions and business affairs can be ascertained.

## II. CONCLUSIONS OF LAW

1. Pursuant to 28 U.S.C. §§ 1334 and 157(b) the court has personal jurisdiction over the parties and subject matter jurisdiction over the claims brought herein.

2. G. Higgins with the intent to hinder, delay and defraud his creditors has transferred property within one year of the filing of the petition.

3. G. Higgins has failed to keep or preserve recorded information, including books, documents, records, and papers, from which his financial condition and business transactions might be ascertained and such failure is not justified under all of the circumstances of the case.

4. G. Higgins is not entitled to discharge in his bankruptcy proceeding pursuant to 11 U.S.C. § 727(a)(2).

5. G. Higgins is not entitled to discharge in his bankruptcy proceeding pursuant to 11 U.S.C. § 727(a)(3).

6. R. Higgins is entitled to discharge in her bankruptcy proceeding.

Having made these findings of fact and conclusions of law, there are no other findings or conclusions necessary to support the court's Judgment. To the extent that any conclusion of law is deemed to be a fact issue, then such conclusion is a finding of fact of this court. To the extent that any finding of fact is deemed to be a legal issue, then such finding is a conclusion of law of this court.

Plaintiff is directed to prepare and submit to the court a final judgment consistent with the foregoing.

# # # END OF ORDER # # #